UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEONARD ROLLINS, *et al.*,

Plaintiffs,

v.

TRAYLOR BROS., INC., and
TRAYLOR/FRONTIER-KEMPER JV,

Defendants.

CASE NO. C14-1414-JCC

ORDER

This matter comes before the Court on Plaintiffs' motion to quash subpoenas (Dkt. No. 164), Plaintiffs' motion for protective order (Dkt. No. 166), and the joinder in those motions by Plaintiffs Pearson and Watkins (Dkt. Nos. 168 and 169). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to quash and GRANTS IN PART and DENIES IN PART the motion for protective order for the reasons explained herein.

I. **BACKGROUND**

This matter arises out of an employment racial discrimination case. (*See* Dkt. No. 6.) Plaintiffs are 20 African Americans hired by Defendants to work on the University of Washington Light Rail transit project (U220 Project). (*Id.* at 2.) Plaintiffs fall into three groups: some allege that they faced harassment until they quit; others assert that they were terminated

"for 'Inability to Perform the Tasks Assigned to the Level of Competence Required by Management. No Misconduct Involved'"; the third group claims that they were "turned around" by Defendants shortly after being hired. (Dkt. No. 164 at 3.) All allege a racial basis for Defendants' acts. (Dkt. No. 6 at 1; *see also* Dkt. No. 134 (granting joinder of Plaintiffs)).

Defendants served subpoenas on 16 businesses who had each employed at least one of Plaintiffs, either prior to or subsequent to Plaintiffs' employment with Defendants. (Dkt. No. 164 at 1, 5; *see, e.g.*, Dkt. No. 165-1 at 2–8.) Each subpoena asks for "all records associated with each of the 20 Plaintiffs, with no date restrictions." (Dkt. No. 164 at 1.) Plaintiffs now move to quash the subpoenas, because (1) Defendants did not provide advance notice, (*Id.* at 4–5), and (2) the subpoenas are overbroad and lack time, subject matter, or privacy limitations. (*Id.* at 2.) Plaintiffs also seek a protective order for their healthcare records, on the grounds of both privilege and relevance. (Dkt. No. 166 at 4–9.)

## II.     DISCUSSION

### A.     Legal Standards

Before serving a subpoena requesting "production of documents," the requesting party must give a copy with notice to other parties. Fed. R. Civ. P. 45(A)(4). The scope of a subpoena request is coequal with the scope of discovery. *See* Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendment. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . ." Fed. R. Civ. P. 26(b)(1). Information is relevant if it is "reasonably calculated to lead to the discovery of admissible evidence." *Surfvivor Media, Inc. v. Survivors Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (internal citation omitted). District courts are afforded broad discretion in determining what is relevant and discoverable. *Surfvivor*, 406 F.3d at 635.

Courts are required to modify or quash subpoenas that present an undue burden or require the disclosure of privileged or protected matter. Fed. R. Civ. P. 45(d)(3)(A). Whether a subpoena imposes an undue burden depends on the relevance of the information requested, and the burden

imposed. 9 James Wm. Moore, et al., *Moore's Federal Practice* § 45.32 (3rd ed. 2006). The Ninth Circuit has suggested that discovery against a nonparty is more limited than the liberal discovery against parties. *Garner Constr., Inc. v. Int'l Union of Operating Eng'rs*, 2007 WL 4287292, at *2 (W.D. Wash. Dec. 4, 2007) (citing *Dart Indus. Co. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir. 1980)); *see United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 371 (9th Cir. 1982). But the Ninth Circuit has also made it clear that courts should not read "undue burden" differently merely because a nonparty has been subpoenaed. *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012). A party moving to quash a subpoena bears the burden of persuasion. *See, e.g.*, *Jones v. Hirschfeld*, 219 F.R.D. 71, 74–75 (2003).

For good cause, the Court may issue a protective order to prevent "annoyance, embarrassment, oppression, or undue burden or expense" in connection with documents sought in discovery. Fed. R. Civ. P. 26(c). A proper basis for a protective order includes "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). District courts are vested with broad discretion in determining whether a protective order is appropriate and, if so, what degree of protection is warranted. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–12 (9th Cir. 2002). The party seeking to limit discovery has the burden of proving "good cause," which requires a showing "that specific prejudice or harm will result" if the protective order is not granted. *In re Roman Catholic Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test.") (internal citation omitted).

**B.  Motion to Quash**

For the reasons below, Plaintiffs' motion to quash (Dkt. Nos. 164) is hereby GRANTED.

**1. Advance Notice**

Defendants have given appropriate advance notice to Plaintiffs as required by the Federal

Rules of Civil Procedure. "If [a] subpoena commands the production of documents . . . then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4). "[N]otice must be given well in advance of the production date," to enable reasonable opportunity for objection. *Butler v. Biocore Medical Technologies, Inc.*, 348 F.3d 1163, 1173 (10th Cir. 2003).

Courts are divided on what constitutes prior notice "in advance of the production date." Some courts have held that notice given "simultaneous[] with the service of the subpoena" still provides reasonable opportunity for objection. *See, e.g.*, *Fla. Media, Inc. v. World Publ'ns, LLC*, 236 F.R.D. 693, 694–95 (M.D. Fla. 2006). Other courts reject notice concurrent with service. *See, e.g.*, *Morris v. Sequa Corp.*, 275 F.R.D. 562, 566 (N.D. Ala. 2011) (holding that an email notice sent on the same day as service did "not amount to prior notice of service"); *see also Kemper v. Equity Ins. Co*, 2016 WL 7428215, at *6 (N.D. Ga. Apr. 29, 2016) (finding that notice given one day before subpoenas were served was sufficient). This Court agrees with the latter approach; the rule plainly states that notice must be given "before" service, but does not articulate a minimum period of time. Fed. R. Civ. P. 45(a)(4).

Defendants issued first notice of the subpoenas to Plaintiffs at 3:20 P.M. on March 17, 2017. (Dkt. No. 165-1 at 2–3, 7–8.) The subpoenas were served on their recipients on March 21, 2017, (Dkt. No. 172 at 11), with a requested production date of March 31, 2017. (*See e.g.*, Dkt. No. 165-1 at 22.) Defendants provided notice before serving the documents, and Plaintiffs had the opportunity to object "in advance of the production date."[1] Thus, Defendants complied with Federal Rule of Civil Procedure 45(a)(4).

### 2. Defendants' subpoenas are overbroad and are quashed

Overbroad subpoenas are subject to limitation by the Court. Courts may limit the use of

---

[1] While the manner in which Defendants went about issuing the subpoenas was technically in compliance with the rule, the Court notes that Defendants emailed Plaintiffs regarding the subpoenas and put them in the mail virtually simultaneously. Had Defendants discussed the subpoenas with Plaintiffs ahead of time, perhaps the motion to quash could have been avoided.

discovery to "prevent employers from using the discovery process to engage in wholesale searches for evidence that might serve to limit its damages for its wrongful conduct," so-called "fishing expeditions." *Rivera v. Nibco, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004). A subpoena should be tailored with some particularity to the relevant information that the requesting party hopes to gain. *See Barrington v. Montage IT, Inc.*, 2007 WL 4370647, at *1, 3–6 (S.D. Fla. Dec. 10, 2007) (quashing a subpoena as "overly broad" when it requested "any and all documents . . . relating to the employment" of the plaintiffs, "including but not limited to" specific named files, and included plaintiffs' social security numbers and date of birth).

Rather than articulating particular subpoenas, Defendants issued a uniform subpoena to every prior or subsequent employer supplied by Plaintiffs as a group. Defendants requested, for *all twenty Plaintiffs*, regardless of whether a particular plaintiff worked there or not:

> without limitation all documents that refer or relate to date(s) of dispatch, hire and separations; reasons for separation; positions and responsibilities; performance; and benefits and compensation. Responsive documents include but [are] not limited to: Job applications, personnel file(s), leave files, employee relations files, payroll records, benefits records, performance evaluations, discharge and discipline records, correspondence, memoranda, electronic mail, medical records, workers' compensation records, complaint files, grievance records, dispatch records, resumes, interview notes, contracts, and agreements.

(Dkt. No. 165-1 at 4–6.) Defendants' subpoena contains analogous language to that rejected in *Barrington*. While certain requests may be relevant towards certain Plaintiffs, it is not the case that all requests are relevant towards all Plaintiffs. Each subpoena contained the names, date of birth, and last four digits of the social security numbers of all 20 Plaintiffs, regardless of whether a particular Plaintiff was ever employed by the specific subpoena recipient. (Dkt. No. 164 at 3; Dkt. No. 165-1 at 4–6.) Defendants must define with "particularity," both what and for whom the information is requested.

//

ORDER
PAGE - 5

There are three major defects with Defendants' subpoenas. First, Defendants' acted inappropriately by issuing subpoenas with Plaintiffs' personal identifying information to businesses without any knowledge of a link between each Plaintiff and each employer. (Dkt. No. 164 at 1, 5; *see, e.g.*, Dkt. No. 165-1 at 2–8.) Defendants may only issue a subpoena regarding a particular Plaintiff if Defendants have reason to believe that the particular Plaintiff was employed by the particular subpoena recipient. Second, Defendants must cater each subpoena to the records and employers relevant to the particular Plaintiff.[2] Third, Defendants must affix a reasonable time limitation on the age of documents requested, such as seven years prior to Plaintiffs' employment with Defendants. *See Stewart v. Orion Fed. Credit. Union*, 285 F.R.D. 395, 398 (W.D. Tenn. 2012).

Defendants acknowledge that there are three broad categories of Plaintiffs, (*See* Dkt. No. 172 at 2–3), but made no effort to distinguish requests between them in their

---

[2] Defendants are correct that *some* records in their subpoena request are relevant. In an employment discrimination action, the United States District Court for the Southern District of Ohio found that the plaintiff's "performance reviews, complaints, and reasons for termination" from a former employer were permissible topics for discovery." *Levitin v. Nationwide Mut. Ins. Co.*, 2012 WL 6552814, at *3 (S.D. Ohio Dec. 14, 2012). In another employment discrimination action, a plaintiff moved to quash a subpoena that requested:
> 1) Documents relating to Plaintiff's personnel file (including employment applications, evaluations, progress reports, records of disciplinary action, and investigation files, as well as her duties, work schedules, and attendance); 2) documents relating to Plaintiff's medical history (records of physical examination, workers compensation, unemployment due to ill health); and 3) documents relating to Plaintiff's wages and benefits (payroll records, W-2 forms, W-4 forms, and benefits information).

*Gragossian v. Cardinal Health, Inc.*, 2008 U.S. Dist LEXIS 55680, at *7–8 (S.D. Cal. July 21, 2008).

The court found the requests were nearly all relevant because the plaintiff requested economic damages including front-pay and emotional distress. *Id.* at *12–14 (finding only requests for W-4s and records of physical health to be overbroad). *But see Stewart*, 285 F.R.D. at 399 (finding that payroll and wage records from prior employers were not relevant to mitigation).

subpoenas. (*See generally id.*) The three categories are:

**Back Pay Claims:** These claims seek "recovery of all compensation . . . for all periods during which Plaintiff[s] would have benefited from the employment opportunities denied to [them] by [D]efendants as alleged in this lawsuit, *up through the date of trial, less any compensation earned during that time frame.*" (Dkt. No. 172 at 2) (emphasis in original).

The primary interest Defendants have in discovery for these claims is finding prior evidence of job performance. *Maxwell v. Health Ctr. of Lake City, Inc.*, 2006 WL 1627020, at *3–5 (M.D. Fla. June 6, 2006) (quashing a subpoena on plaintiff's prior employers, which requested the plaintiff's "entire personnel file," including "salary and payroll history," "prior work history" "health insurance and/or medical information," and "prior complaints of racial discrimination, harassment, or allegations of hostile work environs," because only some of those documents were relevant to the instant race discrimination claim). For these claims, Defendants are entitled to termination or disciplinary records, resumes, attendance records, investigation records, and similar files. *See Levitin*, 2012 WL 6552814, at *3.

However, not all Plaintiffs were dismissed for performance reasons. (*See* Dkt. No. 172 at 3 (stating that Defendants concluded six Plaintiffs lacked qualifications and were "turned around" and five Plaintiffs were discharged for unsatisfactory performance)). Thus, such requests must be further narrowed to only those Plaintiffs that Defendant dismissed for performance reasons. Any request made to employers of these Plaintiffs *after* employment with Defendants is not relevant to whether a Plaintiff is due back-pay.

To the extent that back-pay Plaintiffs assert a lost wages claim, discovery for

mitigation evidence is appropriate. However, only payroll or other records from employers subsequent to Plaintiffs' employment with Defendants is relevant. *See Stewart*, 285 F.R.D. at 399 (rejecting the argument that payroll records from prior employers was relevant to mitigation). Such requests are further limited by Plaintiffs' stipulation not to "seek lost income damages (back and front pay) after the completion of the U220 Project, but only during the duration of the project." (Dkt. No. 176 at 3–4.) Thus, Defendants may only request mitigation evidence from Plaintiffs' employers "during the duration of the project."

**Front Pay Claims:** These claims seek "recovery of all compensation . . . for all periods during which Plaintiff[s] would have benefited from the employment opportunities denied to [them] by defendants . . . through the time of trial and *for a reasonable period into the future, if applicable.*" (Dkt. No. 172 at 3) (emphasis in original). For these claims, mitigation is a major interest. *See EEOC v. Kim & Ted, Inc.*, 1995 WL 591451, at *3–4 (N.D. Ill. Oct. 4, 1995). Defendants are entitled to records related to mitigation, such as payroll records, from Plaintiffs' employers subsequent to employment with Defendants. *Maxwell*, 2006 WL 1627020, at *3 ("[A] former employee's subsequent salary is relevant to the issue of mitigation of damages.").

However, other records that Defendants may recover for back pay claims are not relevant for front pay claims; future performance evaluations or similar files are not relevant to Plaintiffs' performance working for Defendants. *See Lewin*, 2010 WL 4607401, at *1. In addition, because Plaintiffs have stipulated not to "seek lost income damages (back and front pay) after the completion of the U220 Project, but only during the duration of the project," (Dkt. No. 176 at 3–4.), Defendants may not request

ORDER
PAGE - 8

documents related to mitigation beyond the completion of the U220 Project in August 2013.

**<u>Impaired Future Earning Capacity Claims:</u>** These claims seek "recovery of compensation for the reduction in [their] earning capacity that resulted from defendants' conduct, affecting [their] ability to obtain equivalent employment opportunities as well as [their] ability to perform in an equivalent role or position of employment." (Dkt. No. 172 at 3.) Defendants have an interest in finding evidence of other causes for Plaintiffs' alleged future impairment. Performance records similar to those permissible for back-pay claims are relevant to determining the cause of a future impairment. Defendants may also seek compensation and performance records from Plaintiffs' employers subsequent to employment with Defendants.

### C.  Protective Order

Plaintiffs seek a protective order for any medical or psychological records that might be gained through a subpoena. (Dkt. No. 166 at 1.) For the reasons explained below, the Court GRANTS IN PART and DENIES IN PART a protective order for Plaintiffs' psychological and medical records.

#### 1. Plaintiffs' psychological records warrant a protective order

Privileged communications are not subject to discovery. Fed. R. Civ. P. 26(b)(1). Psychological records are privileged under the federal common law, but the privilege can be waived. *Jaffee v. Redmond*, 518 U.S. 1, 15 n.14 (1996). Courts use three different approaches to determine whether the privilege is waived. "Under the broad approach, courts have held that a simple allegation of emotional distress in a complaint constitutes waiver . . . . Under the narrow approach, at the other end of the spectrum, courts have held that there must be an affirmative reliance on the psychotherapist-patient communications before the privilege will be deemed waived." *Fitzgerald v. Cassil*, 216 F.R.D. 632, 636 (N.D. Cal. 2003) (citations omitted). In relevant part, the third "middle ground" approach finds "waiver when the plaintiff has done more

ORDER
PAGE - 9

than allege 'garden-variety' emotional distress." *Id.* at 637. Washington Courts have applied both the narrow and "middle ground" approaches. *Compare, e.g.*, *Carrig v. Kellogg USA Inc.*, 2013 WL 392715, at *3 (W.D. Wash. Jan. 30, 2013) (applying "middle ground" approach), *with Sims v. Lakeside School*, 2007 WL 5417731, at *1 (W.D. Wash. Mar. 15, 2007) (applying narrow approach). Under either approach, Plaintiffs have not waived their privilege.

Under the middle ground approach, Plaintiffs waive their privilege if they allege more than "garden variety" emotional distress. *Carrig*, 2013 WL 392715, at *3. "Garden variety" emotional distress is "ordinary or commonplace emotional distress, that which is simple or usual." *Id.* (internal quotations omitted). "In contrast, emotional distress that is not garden variety may be complex, such as that resulting in a specific psychiatric disorder." *Id.* (internal quotations omitted). However, layman allegations bearing similarity to a "specific psychiatric disorder" does not render the claim "complex." *Id.*

In *Sims v. Lakeside School*, a plaintiff who alleged symptoms such as "depression, anger, irritability, sleep loss, discouragement, withdrawal, relived experience, and low self esteem" still fell within the ambit of "garden variety" emotional distress. 2007 WL 5417731, at *1. However, the *Sims* court noted that a plaintiff who asserts bodily injury, relies on an expert or provider to prove symptoms, or pleads intentional or negligent infliction of emotional distress, does not plead "garden variety" emotional distress, and is thus subject to waiver. *Id.*; *see also Fajardo v. Pierce Cty.*, 2009 WL 1765756, at *2 n.2 (W.D. Wash. June 19, 2009) (finding that when the plaintiff alleged that the defendant exacerbated her specific disorder of "Graves disease," it became a "complex medical issue" and was not garden variety); *Prue v. Univ. of Wash.*, 2008 WL 3891466, at *1–2 (W.D. Wash. Aug. 19, 2008); *but see United States v. Barber*, 2014 WL 2515171, at *1 (W.D. Wash. June 4, 2014) ("[P]anic attacks, anxiety, and nightmares are not 'garden variety' emotional distress.").

Plaintiffs allege only "'garden variety' emotional distress." In their complaint, Plaintiffs pray for relief for "humiliation, loss of enjoyment of life, pain and suffering, personal indignity,

embarrassment, fear, sadness, anger, anxiety,[3] anguish, and other forms of emotional distress they have experienced." (Dkt. No. 143 at 14.) None of these are expert diagnoses, but merely lay observations. Plaintiffs have stipulated that no expert or physician will testify on Plaintiffs' behalf, and no Plaintiffs will claim a psychological condition was exacerbated by the Defendants.[4] (Dkt. No. 166 at 1.) Plaintiffs have not pleaded intentional or negligent infliction of emotional distress, nor have Plaintiffs pleaded bodily injury. (*See generally* Dkt. No. 143.) Plaintiffs' allegations are synonymous with the emotional distress allegations in *Sims*, and are thus "garden variety" allegations.

Because Plaintiffs have alleged only "garden variety" emotional distress, they have not waived privilege as to psychological records. Thus, the Court GRANTS a protective order that prohibits Defendants from obtaining Plaintiffs' psychological records.

**2. Some Plaintiffs are entitled to a protective order for medical records.**

Unlike with psychological records, no federal physician-patient privilege exists. *Gilbreath v. Guadalupe Hosp. Found. Inc.*, 5 F.3d 785, 791 (5th Cir. 1993). However, the Court may also protect records to prevent "annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1). Certain Plaintiffs have asserted a belief that "emotional harm or physical sickness was caused by Defendants." (Dkt. No. 166 at 7.) Per stipulation, no "medical records or medical testimony" will be used "to prove emotional distress damages." (*Id.* at 9.) No "expert testimony or treating physicians' testimony" will be proffered, and no allegation will be permitted that asserts any "medical or psychological condition was caused or exacerbated by the conduct of Defendants."(*See id.* at 1.) For most Plaintiffs, discovery of

---

[3] While the Court acknowledges that "anxiety" was not "garden variety" emotional distress in *Barber*, 2014 WL 2515171, at *1, this case is distinguishable. In *Barber*, the plaintiff alleged "increased panic attacks, anxiety, [and] nightmares . . . ." as a result of the defendant's actions. *Id.* at 4. This suggests the plaintiff had a preconceived notion of a condition of anxiety, akin to a diagnosable disorder. Here, the Plaintiffs allege anxiety in a much more generalized way. (*See* Dkt. No. 143 at 14.)

[4] Plaintiffs are foreclosed from presenting evidence of emotional distress as a basis for impaired future earning capacity at trial.

medical records is not likely to lead to relevant evidence, and would therefore constitute an undue burden or expense.

However, at least one Plaintiff's claim has a basis in a medical condition. Plaintiff Dyvon Payton's medical records relating to epilepsy are relevant, because he was discharged on account of his history with epilepsy. (Dkt. No. 166 at 8–9.) Plaintiff Payton will "stipulate to the production of his medical records . . . related to epilepsy" at the University of Washington. (*Id.*) Defendants are correct that other records related to Plaintiff's epilepsy remain relevant as well. (Dkt. No. 170 at 12.) Thus, Defendants may pursue all medical records relating to Plaintiff Payton's epilepsy.

Plaintiffs have shown "that specific prejudice or harm will result" by the intrusion on Plaintiffs' privacy if the Court does not grant a protective order. *See Roman Catholic Archbishop*, 661 F.3d at 424. Thus, a protective order is appropriate to the extent that Plaintiffs' medical records are not a basis of their respective claims.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to quash (Dkt. No. 164) is GRANTED. Plaintiffs' motion for protective order (Dkt. No. 166) is GRANTED IN PART and DENIED IN PART. It is denied in part as to Plaintiff Dyson's medical records relating to his epilepsy. The Court's ruling applies to Plaintiffs Watkins and Pearson. (Dkt. Nos. 168 and 169.)

The Court would remind the parties that discovery motions are disfavored, and encourages the parties to confer and resolve their issues prior to involving the Court. While Defendants' subpoenas were not appropriate, the Court declines to impose sanctions at this time.

DATED this 5th day of May, 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE